IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                      No. CR 98-251 MV

SHIRLEY A. JONES, MEGA-UNIVERSAL
OXYGEN AND HOME CARE SERVICES, INC.,
*et al.*,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motions for a *Monsanto* Hearing and Release of Seized Funds and on the parties' motions concerning procedures on remand [**Docs. 4, 21, 86, 87, 90, 94, 98**]. In these briefs, the parties seek rulings from the Court on several evidentiary and procedural matters which may arise during or as a result of the motion hearing regarding the release of restrained assets to Defendants. The Court, having considered the motions, supplemental briefs, relevant law, and being otherwise fully informed, makes the following rulings, explained in the body of this opinion.

## BACKGROUND

Defendants Mega-Universal Oxygen and Home Care Services, Inc. ("Mega"), Shirley Jones, Steven Jones, Ralph B. Montoya, and Christopher Bates, are charged by Third Superseding Indictment with 245 counts alleging, principally, health care fraud, RICO violations, money laundering, wire fraud and tax violations. In brief, the Government alleges that Shirley and Steven

Jones, as officers of Mega and with the aid of the other two individual defendants, defrauded the federal government of $17,800,000 in Medicaid payments.

In conjunction with this indictment, assets belonging to Mega and Shirley and Steven Jones in the range of $1,500,000 were "frozen" pending trial by an ex parte restraining ordered issued by this Court pursuant to 21 U.S.C. § 853(e)(1)(A). Mega and Shirley Jones sought pre-trial release of some of these funds in order to pay for legal fees and living expenses.[1] This Court denied Defendants' motion and their request for a hearing and Defendants appealed.

In *United States v. Jones*, 160 F.3d 641 (10th Cir. 1998), the Tenth Circuit ruled that Defendants may be entitled to pre-trial release of some of the restrained assets. Specifically, the Tenth Circuit held that Defendants were entitled to a hearing in which they must: (1) demonstrate that they have "no assets, other than those restrained, with which to retain private counsel and provide" for themselves and their families; and (2) "make a prima facie showing of a bona fide reason to believe the grand jury erred in determining that the restrained assets" were seizable.[2] *Id*. at 647. The court stated:

> We stress that although an accused bears the burden of persuasion on the first requirement, the second entails only a burden of production. Once a defendant satisfies these initial burdens, due process requires a district court to conduct an adversarial hearing at which the government must establish probable cause to believe that the restrained assets are traceable to the underlying offense.

---

[1]At that time, Steven Jones had not been indicted. Steven Jones was indicted in the Third Superseding Indictment and now also challenges the pre-trial restraint of assets.

[2]Originally Defendants were charged only with health care fraud offenses and the assets at issue were frozen solely pursuant to the health care fraud statute. Accordingly, the Tenth Circuit opinion speaks specifically of demonstrating that the assets were derived from the "commission of a health care offense." *Jones*, 160 F.3d at 647. Since the case has been returned from appeal, the grand jury issued the Third Superseding Indictment, alleging for the first time various RICO offenses and seeking seizure under the RICO statute.

*Id.* The district court "may receive and consider evidence and information that would otherwise be inadmissible under the Federal Rule of Evidence." *Id.* at 648. Further, although the Government may present evidence on the underlying offense, "[t]he district court must take those allegations of the indictment as true and assume at the hearing that the underlying has been committed." *Id.* at 648.

Pursuant to the Tenth Circuit mandate, the Court has set this motion for a two stage hearing. In the first part, the Defendants will have the burden of establishing that they have no other legitimate sources of income or assets from which to pay their legal fees or provide for their living expenses. Defendants will also have the burden of making a prima facie showing of a reason to believe that the assets frozen are not in fact forfeitable. In the second part of the hearing, the Government will have the burden of establishing probable cause to believe that the assets are indeed forfeitable and subject to pre-trial restraint under the RICO or health care fraud statutes. In anticipation of this hearing, the parties have identified several issues on which they seek preliminary ruling by the Court, discussed in detail below.

## ANALYSIS

The parties have identified the following five issues for the Court's consideration:

1. Do Defendants Shirley and Steven Jones have standing to seek the release of funds owned by the Mega corporation?

2. Can Defendants meet their burden of proof regarding the lack of unrestrained assets through the testimony of the FBI case agent?

3. Can the Government use Defendants' testimony at the hearing either to impeach Defendants at trial or as a source of investigative leads?

4. What standard governs the forfeitability of assets in this case?

3

5.  Should the Government prevail at trial, can the Government seek the return of forfeitable assets released by Defendants to third parties, including their attorneys?

The Court will address each of these issues in turn.

## 1.  Standing to Seek Release of Corporate Assets

The parties agree that Defendants Shirley and Steven Jones have standing to challenge the restraint of assets belonging to them personally, specifically payments in the amount of $2,000 per month on a covenant not to compete with the company that bought Mega's assets. The parties also agree that Mega, who is named as a separate defendant in this case, has standing to contest the restraint of corporate assets. The remaining question, as it has been framed by the parties, is whether Defendants Shirley and Steven Jones have standing to seek the release of funds owned by the Mega corporation to be used to pay their personal legal and living expenses. The Joneses argue first, that the Government has waived the standing issue and second, that as the sole officers, directors and shareholders of Mega, they have a right to vote themselves "bonuses" or "salary advances" and to provide themselves with indemnity for their legal expenses. The Government responds that the issue was not waived and that the Joneses have no legal right to bonuses or salary advances for work not yet done and that they are not entitled to indemnity.

Defendants' waiver argument is based on the fact that the Government did not raise the standing issue in its initial response to Defendants' motion for a *Monsanto* hearing. *See* Defendants' Reply Memorandum  Concerning Procedures on Remand, p. 1. Defendants acknowledge that the Government did raise the issue of standing at the hearing held on Defendants' *Monsanto* motion but assert that the Court "implicitly ruled on" the standing issue when it denied Defendants' motion on

other grounds. Defendants then argue that the Government forfeited the issue by failing to pursue it with the Tenth Circuit.

The Court finds Defendants' arguments unpersuasive. Although it is true that the Government did not raise the standing issue in its response to Defendants' motion, it did raise the issue at the hearing on that motion. At that stage, the question was whether Defendants were entitled to a hearing on the pre-trial restraint of assets, not whether they were in fact entitled to release of those assets. Because the Court found that the Defendants were not even entitled to a hearing on the motion, it did not have to decide the standing issue. If the Court made any "implicit" ruling, it was that the question of standing is more properly litigated as part of the hearing on the release of assets, rather than as part of the threshold question of whether Defendants were even entitled to litigate the pre-trial release of assets at all. Likewise, since the question on interlocutory appeal was whether the Defendants were entitled to a hearing on their motion, the Government did not need to pursue the standing issue with the Tenth Circuit, and indeed possibly could not, since this Court chose not to rule on the issue. Thus, the Court finds that the Government has not "waived" or "forfeited" the standing issue.

However, the Court must observe that the issue presented here is not really one of the Joneses' standing to contest the restraint of Mega's assets. The parties agree that the assets at issue belong to the corporation and that the corporation, as a defendant in this action, has standing to contest their seizure. Mega is a party to this motion and has expressed every intent of vigorously pursuing the release of its funds. Thus, the Joneses cannot assume the position of asserting a derivative right of the corporation since the corporation is already asserting that right. Because the corporation is already asserting its own right to its own assets, the Joneses cannot also personally

contest the restraint of the corporation's assets. *See United States v. New Silver Palace Restaurant, Inc.*, 810 F.Supp. 440, 442-43 (E.D.N.Y. 1992); *Gregory v. Mitcehll*, 634 F.2d 199, 202 (5th Cir. 1981); 19 Am.Jur.2d Corporations § 2246 ("Although, in a proper case, if the corporation fails to bring the action, suit may be filed by a stockholder acting derivatively on behalf of the corporation, in no case can the stockholder bring suit for himself and in his own right on a cause of action belonging to the corporation . . . . [S]uch an action would authorize multitudinous litigation and ignore the corporate entity.")

Rather, properly framed, the question is whether the Court can *release to Mega* restrained assets which Mega will then *release to the Joneses* to use to pay their personal legal and living expenses. In a sense, the question is the opposite of what the parties have stated: that is, can *Mega* assert the right to release some of its assets for the express purpose of giving those funds to the Joneses?

If the Joneses were not parties to this action, they would stand in the same position as any third party claimant with regard to the corporation's funds. Employees, officers, directors and shareholders are particularly likely to have third party claims against an indicted corporation. As Defendants point out, in the context of civil forfeiture, "any person or party having a legally recognized interest" in the property at issue may intervene in the proceedings. *United States v. One 1961 Cadillac Hardtop Automobile*, 207 F.Supp. 693, 698 (E.D. Tenn. 1962). Third party claimants have similar rights in the context of criminal forfeitures such as this one.

However, the criminal forfeiture statutes specifically provide for the adjudication of third party claims *after* the conclusion of trial and issuance of a final forfeiture order. 18 U.S.C. § 1963 (k) (establishing procedures and standards for adjudicating third party claims to property ordered

forfeited under RICO statute); 21 U.S.C. § 853(n) (same for general forfeiture statute, applicable to forfeitures for health care fraud); *see also United States v. Mageean*, 649 F.Supp. 820, 823 (D.Nev. 1986); 31A Am.Jur.2d Extortion, Blackmail and Threats § 199. The statute makes no provision for the resolution of any of these claims in the pre-trial period while the assets are temporarily restrained. The reasons for this should be obvious: there will be no need for the Court to adjudicate any third party claims if the assets are not ultimately seized, an issue which will not be determined until trial on the merits. Further, the entire purpose of the temporary restraint of assets under the statute is to prevent the disbursement to third parties of funds which may, as a result of the illegal activity, belong to the Government. Although the statute recognizes that some of these individuals may have legitimate claims to the forfeitable funds, the statute provides for resolution of these claims after trial, once ownership of the funds has been established.

Thus, third party claimants, such as the Joneses, normally must await a jury verdict to press their claims to forfeitable assets. Does the fact that Joneses are indicted alongside of Mega and are the sole officers, directors and shareholders of the corporation, change this result? The Court concludes that it does not.

The Joneses claim that they are entitled to the Mega's assets either in the form of bonuses and salary advances or in the form of indemnity for their legal fees. Regarding the first claim, the Joneses do not assert that they have not been paid for their past work but merely that, as the sole officers and shareholders, they have an absolute right to vote themselves bonuses or advances. Regardless of the validity of this assertion (which the Government contests), the Court fails to see why the Joneses claim for compensation from the company should be privileged over all other third party claims solely because the Joneses are indicted along side the corporation. In particular, since there are assets which

belong to the Joneses personally– which may be released if the Joneses establish no other source of income– the Court is not presented with a situation where the combined pre-trial restraint of the corporation's assets and the officers' or shareholders' assets completely divests the individual defendants of a means of supporting themselves.

With regard to the corporation's potential indemnity of the Joneses for their legal expenses arising from this case, the Joneses assert that because they have been indicted, at least in part, as a result of their positions in the corporation, they are entitled to vote themselves indemnity. *See* NMSA 1978, § 53-11-4.1 ("Indemnification of directors and officers"). The Government responds that the Joneses were not made defendants in this case "by reason of the fact that they are or were directors of Mega," but because of their personal actions. *See* Supplemental Brief of United States Concerning Procedures on Remand, p. 8. To reject this argument, the Court need look no further than the first two paragraphs of the indictment which allege that at all relevant times the Joneses were officers of Mega. *See Petty v. Bank of New Mexico Holding Co.*, 109 N.M. 524, 529, 787 P.2d 443, 448 (1990). However, although the Joneses are defendants in this case at least in part due to their position in the corporation, they are not entitled to vote themselves indemnity. Specifically, the controlling statute provides that only shareholders, officers or directors who are not involved in the legal proceeding may vote on the indemnity question. NMSA 1978, § 53-11-4.1(E). In a case such as this one, where there are no uninvolved individuals, the issue is to be resolved by an independent appointed counsel. *Id*. Thus, legally the Joneses cannot simply vote themselves indemnity.[3]

_____

[3]The Joneses argue that the statute establishing the parameters of indemnity for corporate officers is designed to protect shareholders and that, since they are the only shareholders of Mega, there are no "innocent parties" whose rights must be protected in this case. While that may be the case, this Court cannot release restrained funds unless those funds are going to be dispersed and used legally which in this case requires following the statutory requirements for corporate

Moreover, even if, following legal formalities, Mega agreed to indemnify the Joneses, that does not create a right on the part of the Joneses to *pre-trial* release of the restrained funds. Indemnity means "[r]eimbursement" and to indemnify means "[t]o restore the victim of a loss, in whole or in part, by payment, repair, or replacement." Black's Law Dictionary, 6th Ed., p. 769 (1990). Indemnity does not normally entail advance payment of legal fees. Indeed, the statute provides a separate means of approving advance payment of legal fees which requires a determination by those empowered to decide the issue that the facts do not preclude indemnity and a written affirmation by the officer or director that she believes she will meet the statutory standard and will repay the amounts advanced if it is ultimately concluded that she was not entitled to indemnity. NMSA 1978, § 53-11-4.1(F). In the normal course of events, a corporate officer or director is required to provide for his own legal expenses and then may request (and in some cases even has a right to) reimbursement of those fees at the conclusion of the case.

Based on the forgoing, the Court holds that the Joneses' third party claims should be resolved after trial on the merits, as provided by statute. Particularly in light of the Government's significant interest in the restrained funds, the Court concludes that it is not at liberty to release to the Mega corporation assets which it will then disburse to the Joneses.

Finally, the Government states that it is informed that the IRS has served a levy on some of the bank accounts at issue here. While disclaiming any attempt to present third-party claims itself, the Government states "there may be corporate liabilities which must be paid before there can be any distribution of assets, and must be addressed by the Defendants before any other issues are addressed." Memorandum of United States Concerning Procedures on Remand, p. 4-5; *see also*

_____

indemnity.

Supplemental Brief of United States Concerning Procedures on Remand, p. 10. The Court finds this argument both inappropriate and irrelevant. As discussed in more detail below, the Government has an obligation to assist Defendants in identifying non-forfeitable assets which they may use to pay for their legal fees and living expenses and not to create obstacles to Defendants' access to those funds. *United States v. Nichols*, 841 F.2d 1485, 1506 (10th Cir. 1988). In this context, the United States Attorneys do not represent the IRS and have no basis for asserting its claims. The IRS stands in the same position as any other third party claimant and must, accordingly, wait until the conclusion of the case to have its claims litigated.

### 2. Testimony of FBI Special Agent

In their initial memorandum, Defendants state: "[w]e expect to meet our burden or persuading the Court that the defendants have no assets, other than those restrained, with which to retain private counsel or provide for themselves by calling FBI Special Agent Margaret Russin to describe what we believe has been an extensive investigation of the defendants' assets. We anticipate that Agent Russin will testify that she cannot identify any non-forfeitable assets belonging to any of the defendants that are available for living expenses or attorneys fees." Defendants' Memorandum Concerning Procedures on Remand, p. 4. Although the Government now agrees that Defendants may call Agent Russin, it argues that Defendants cannot successfully meet their burden of proof through the Agent's testimony because "it is impossible for the United States to discover all assets or income of the Jones." Supplemental Brief of United States Concerning Procedures on Remand, p. 11. The Government attempts to prove this point by identifying several assets which are either not forfeitable or are forfeitable but could not be found and which, the Government argues, the Joneses could be using to provide for their current living expenses.

In so doing, the Government has itself demonstrated the relevance of Agent Russin's testimony to these proceedings. Although the Court does not doubt that the United States Attorneys are investing substantial effort in this case, it does not believe that the AUSAs are themselves out in the field researching the location and scope of Defendants' assets. To the extent that the Government, through its agents, has acquired information about unrestrained assets, that information must be presented to Defendants and, in this hearing, to the Court. Whether Agent Russin's testimony ultimately convinces the Court that Defendants have no unrestrained assets, or the opposite, remains to be seen.

Moreover, the Tenth Circuit has observed that the United States Attorneys have an obligation to assist defendants in forfeiture cases in locating unrestrained assets which can be used for living expenses and legal fees. *Nichols*, 841 F.2d at 1506. In holding that the forfeiture of assets  needed to pay legal fees did not violate the Sixth Amendment, the Tenth Circuit noted that there may be other sources of funds available to defendants to pay legal fees. The *Nichols* court stated, "[t]he Justice Department has said that prosecutors should 'assist in identifying the assets, if any, belonging to a defendant which are not subject to forfeiture.'" *Id*. (*quoting* Justice Department Guidelines on Forfeiture of Attorneys' Fees, 38 Crim.L.Rep. (BNA) 3001, 3008 (1985)). Thus, the Court finds it perfectly appropriate for Defendants to call the case agent as a witness on this issue.

Finally, Defendants ask that Agent Russin be treated as a Government witness and request the production of Jenks material pursuant to Fed.R.Crim.Proc. 26.2(g). The Government opposes, stating "[a]t neither hearing [on the restrained assets] do the Federal Rules of Evidence apply." Memorandum of United States Concerning Procedures on Remand, p. 8. On the contrary, the Tenth Circuit in *Jones* stated simply, the district court "may receive and consider evidence and information

that would otherwise be inadmissible under the Federal Rule of Evidence," 160 F.3d at 648, not that the Rules "do not apply." Further, although Rule 26.2(g) requires the production of witness statements specifically only for pre-trial suppression hearings, the Advisory Committee Notes observe, "[t]he reasons given in 1983 for extending Rule 26.2 to a suppression hearing are equally compelling with regard to other adversary type hearings which ultimately depend on accurate and reliable information." Fed.R.Crim.Proc. 26.2, Advisory Committee Notes to 1983 Amendments. In addition, given the obligation of the United States Attorney to assist rather than hamper the Defendants' search for unrestrained assets, the Court finds unpersuasive the Government's assertion that Defendants are merely engaging in a "fishing expedition" by calling Agent Russin and seeking related discovery. Accordingly, the Court will grant Defendants' motion for the production of statements by Agent Russin pursuant to Fed.R.Crim.Proc. 26.2(g).

### 3. Subsequent Use of Defendants' Testimony

The parties agree that, should Defendants testify at the up-coming hearings, the Government cannot use their testimony as substantive evidence of guilt at trial. *Simmons v. United States*, 390 U.S. 377 (1968). The Government states that it only intends to use the testimony for impeachment. *See* Supplemental Brief of United States Concerning Procedures on Remand, p. 13. Defendants seek a ruling that the Government cannot use the testimony for any purpose, including impeachment or investigation.

Defendants rely on the cases of *Garrity v. New Jersey*, 385 U.S. 493, 499-500 (1967), *In re Grand Jury Subpoenas*, 40 F.3d 1096, 1100-1102 (10th Cir. 1994) and *Kastigar v. United States*, 406 U.S. 441, 461-62 (1972). Both *Garrity* and *In re Grand Jury Subpoenas* address the use of statements made by police officers as a result of internal police investigations. In both cases, the

officers were told that if they did not provide a statement they would be fired. As a result of this compulsion to speak, the Supreme Court held in *Garrity* that the officers statements could not be used in subsequent criminal prosecutions. *Garrity*, 385 U.S. at 500. Interpreting *Garrity*, the Tenth Circuit held in *In re Grand Jury Subpoenas*, that the Government could subpoena such statements and even disclose them to a grand jury, but would then have to demonstrate that the indictment was returned based on evidence independent of the statements. 40 F.3d at 1100-1102. Neither case specifically address the issue of impeachment. *Kastigar*, on the other hand, held that statements obtained as a result of grants of immunity to a defendant cannot be used for any purpose, including impeachment or subsequent investigation. 406 U.S. at 461-62.

Neither the Supreme Court nor the Tenth Circuit have ruled on whether a defendant's testimony at a pre-trial hearing may be used for impeachment purposes at trial. *See United States v. Salvucci*, 448 U.S. 83, 93-94 (1980). The Supreme Court, in *Salvucci*, did observe that a number of state courts have held that such testimony is admissible for impeachment. *Id.* The Court then stated, "[t]his Court has held that 'the protective shield of *Simmons* is not to be converted into a license for false representations . . . .'" *Id.* (*quoting United States v. Kahan*, 415 U.S. 239, 243 (1974)).

More directly on point, apparently every court to consider the issue has concluded that a defendant's pre-trial testimony may be used to impeach him at trial. *United States v. Jaswal*, 47 F.3d 539, 543 (2ⁿᵈ Cir. 1995); *United States v. Beltran-Gutierrez*, 19 F.3d 1287, 1289 (9ᵗʰ Cir. 1994); *United States v. Smith*, 940 F.2d 710, 713 (1ˢᵗ Cir. 1991); *United States v. Charles*, 738 F.2d 686, 698 (5ᵗʰ Cir. 1984); *United States v. Quesada-Rosadal*, 685 F.2d 1281, 1283 (11ᵗʰ Cir. 1982); *Bailey v. United States*, 389 F.2d 305, 311 (D.C. Cir. 1967); *see also United States v. Salemme*, 985 F.Supp. 197, 203 (D.Mass. 1997) (stating that "it appears" that a witness' testimony in a forfeiture

hearing could be used to impeach his trial testimony in a later criminal proceeding); *United States v. Roberts*, 14F.3d 502, 517 (10th Cir. 1993) (describing the *Simmons* rule in dicta as providing that the defendant's testimony could be used for impeachment). Specifically, these courts have held that since the Supreme Court has permitted the use of illegally seized evidence and statements taken in violation of Miranda for impeachment, it follows that testimony given at a pre-trial hearing may be put to similar use. *See United States v. Havens*, 446 U.S. 620, 629 (1980); *Harris v. New York*, 401 U.S. 222, 225 (1971). As the Supreme Court stated in an oft quoted passage, "[e]very criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury." *Harris*, 401 U.S. at 225.

In light of this apparent consensus of authority, the Court holds that any testimony Defendants give at the pre-trial hearings may be used for impeachment purposes. However, the Government does not claim a right to use the testimony for the purpose of developing investigative leads. The Court has not been presented, and has not found, any case addressing this precise issue. Given the Government's position that it will only seek to use the testimony for impeachment, the Court finds it appropriate to grant that part of Defendants' motion which seeks to preclude the use of the testimony for investigative purposes. *See Kastigar*, 406 U.S. at 461-62.

### 4. Forfeiture Standard

Next, the parties dispute what standard the Court should use in determining whether the assets at issue are forfeitable. The Government contends that the Court should use a "but-for" test to determine whether the assets are forfeitable. In other words, the Court should find forfeitable all assets which Defendants would not have acquired "but-for" their illegal activity. Specifically, the Government argues that the infusion of funds from health care fraud permitted Mega to survive and

grow, developing the inventory, patient list and stature in the community that it eventually sold when it sold all of its assets in March 1998, making all of the proceeds of that sale forfeitable. Defendants argue that the but-for test "permits a potentially limitless– and patently unconstitutional– forfeiture." Defendants' Reply Memorandum Concerning Procedures on Remand, p. 10. Defendants provide the hypothetical of a defendant who obtains $5,000 through health care fraud, invests that sum in an otherwise legitimate business to save it from bankruptcy and then legally develops the business into a $10,000,000 entity. Under the Government's standard, the entire business would be forfeitable, which, Defendants assert, would be unconstitutional. The Government responds that this case involves allegedly $17,800,000 in Medicaid fraud, making the forfeiture of $3,000,000, as alleged in the indictment, far from constitutionally suspect.

At time of the interlocutory appeal, the only grounds for forfeiture alleged in this case were pursuant to the health care fraud statue, 18 U.S.C. § 982(a)(6), which incorporates by reference 21 U.S.C. § 853. Title 18 U.S.C. § 982(a)(6) provides that "[t]he court, in imposing sentence on a person convicted of a Federal health care offense, shall order the person to forfeit property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense." Since the appeal was taken, the Third Superseding Indictment was issued which also alleges forfeiture under the RICO statute, 18 U.S.C. § 1963(a)(1), (2) & (3). That statute states:

> **(a)** Whoever violates any provision of section 1962 of this chapter . . . shall forfeit to the United States, irrespective of any provision of State law--
>
> **(1)** any interest the person has acquired or maintained in violation of section 1962;
>
> **(2)** any--

**(A)** interest in;

**(B)** security of;

**(C)** claim against;  or

**(D)** property or contractual right of any kind affording a source of influence over;

any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and

 **(3)** any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.

Forfeiture under the health care fraud statute is narrowly targeted at property derived directly or indirectly from the illegal acts. Subsections (1) and (3), of the RICO forfeiture statute also target property derived from the RICO violations but reach a potentially broader range of assets. The question posed by the parties, whether the "but for" standard applies to the assessment of forfeitability, is really only relevant to forfeiture under the broader RICO provisions, 18 U.S.C. § 1963(a) (1) and (3). *See United States v. DeFries*, 129 F.3d 1293, 1313 (D.C. Cir. 1997).

All of the circuit courts which have considered the issue have adopted a "but for" or "cause in fact" test as the proper standard for determining whether the government has established a sufficient nexus between the property to be forfeited and the RICO violation. *DeFries*, 129 F.3d at 1313; *NOW v. Scheidler*, 968 F.2d 612, 625 (7th Cir. 1992); *United States v. Angiulo*, 897 F.2d 1169, 1213 (1st Cir.1990); *United States v. Ofchinick*, 883 F.2d 1172, 1183 (3d Cir.1989); *United States v. Porcelli*, 865 F.2d 1352, 1365 (2d Cir.1989); *United States v. Horak*, 833 F.2d 1235, 1242-43 (7th Cir.1987); *see* Palm, RICO Forfeiture and the Eight Amendment: When is everything Too Much? 53 U.Pitt.L.Rev. 1, 30-35 (1991). As the Seventh Circuit explained when it first adopted this standard,

"in order to win a forfeiture order, the government must show ... that [the defendant's] racketeering activities were a cause in fact of the acquisition or maintenance of" the property sought. *Horak*, 833 F.2d at 1243 (interpreting 18 U.S.C. § 1963(a)(1)). Thus, the court in *DeFries*, a case alleging ballot tampering by union officials, held that the district court could properly order the forfeiture of defendants' salaries since the defendants would not have earned this money "but for" their election tampering, even if the government could not prove that the election results would have been different in the absence of the tampering. *DeFries*, 129 F.3d at 1313. On the other hand, the court in *Angiulo* reversed an order of forfeiture where the boats at issue had been acquired prior to the commission of both predicate acts which formed the basis for the underlying RICO conviction, concluding that the government failed to met the but-for test. *Angiulo*, 897 F.2d at 1213-14.

Following these precedents, the Court holds that the but-for or cause-in fact standard properly articulates the nexus between the offense and the asset which the Government must demonstrate in order to establish forfeitability under 18 U.S.C. § 1963(a)(1) and (2).

However, the sweep of the RICO forfeiture statute is even broader than this, and even broader than the Government argues in its briefs. Criminal forfeiture, unlike civil forfeiture is a penalty assessed against a convicted defendant. *Nichols*, 841 F.2d at 1486. Seldom seen in American law prior to 1970, criminal forfeiture was adopted as part of "an assault" on drug trafficking and organized crime. *Russello v. United States*, 464 U.S. 16, 24 (1983); *Nichols*, 841 F.2d at 1487. Accordingly, it is not limited to assets "tainted by" the illegal conduct but is intended more generally "to give force to the old adage that crime does not pay." *United States v. Moffitt, Zwerling & Kemler*, 83 F.3d 660, 669 (4th Cir. 1996); *Nichols*, 841 F.2d at 1486.

Thus, subsection (2) of § 1963(a) provides for the forfeiture of "any . . . interest in . . . any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962 [the RICO statute]." This subsection provides for the forfeiture of completely legitimate assets owned by a defendant in any "enterprise" operated in violation of RICO. *Russello v. United States*, 464 U.S. 16, 24 (1983); *United States v. Sarbello*, 985 F.2d 716, 722 (3rd Cir. 1993); *Adult Video Assoc. v. Barr*, 960 F.2d 781, 790 (9th Cir. 1992) *modified on remand* 41 F.3d 503 (9th Cir. 1994); *United States v. Busher*, 817 F.2d 1409, 1413 (9th Cir.1987); *United States v. Anderson*, 782 F.2d 908, 917-18 (11th Cir.1986); *United States v. Ginsburg*, 773 F.2d 798, 801 (7th Cir.1985), cert. denied, 106 S.Ct. 1186, 89 L.Ed.2d 302 (1986); *United States v. Cauble*, 706 F.2d 1322, 1349-50 (5th Cir.1983), cert. denied, 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984); 31A Am.Jur.2d Extortion, Blackmail and Threats § 176; Palm, RICO Forfeiture and the Eight Amendment, 53 U.Pitt.L.Rev. at 36-40. As the Ninth Circuit has observed,

> Section 1963 was designed to totally separate a racketeer from the enterprise he operates. *See Russello*, 464 U.S. at 28, 104 S.Ct. at 303. Thus, forfeiture is not limited to those assets of a RICO enterprise that are tainted by use in connection with racketeering activity, but rather extends to the convicted person's entire interest in the enterprise.

*Busher*, 817 F.2d at 1413; *Barr*, 960 F.2d at 790. Similarly, the Supreme Court has explained,

> Subsection (a)(1) reaches "any interest," whether or not in an enterprise, provided it was "acquired ... in violation of section 1962." Subsection (a)(2), on the other hand, is restricted to an interest in an enterprise, but that interest itself need not have been illegally acquired.

*Russello*, 464 U.S. at 24.

Thus, in *Busher*, 817 F.2d at 1413, the Ninth Circuit held that the defendant's 92% interest in a $3,000,000 company was completely forfeitable under the statute even though the defendant was

convicted of procuring only 3 fraudulent contracts, worth no more than $335,000. *Busher*, 817 F.2d at 1414. Likewise, in *Sarbello*, 985 F.2d at 722, the Third Circuit upheld the forfeiting of 100% of the defendant's legitimate business where the jury found that only 10% of the business assets were tainted by the illegal conduct. In *Alexander v. United States*, 509 U.S. 544 (1993), the defendant was convicted of RICO-obscenity violations based on the sale of multiple copies of four books and three videos. At 548. The district court ordered the forfeit of $9,000,000 in assets and all of the defendant's many businesses. The Supreme Court found this seizure to be within the limits of the statute and found that the statute was not overbroad, even though it infringed on legitimate First Amendment activity. *Id*. at 557.

As a result of cases such as these, forfeiture under RICO has been described not just as "potentially limitless," as Defendants state, but as "quite literally without limitation." *Busher*, 817 F.2d at 1414; 31A Am.Jur.2d Extortion, Blackmail and Threats § 179. Indeed, the Court believes the RICO forfeiture provisions would not even pause in devouring the business described in Defendants' hypothetical.

The "check" on this incredibly blunt tool is not provided by the statute itself but by the Eighth Amendment of the Constitution which prohibits "excessive fines." *Alexander*, 509 U.S. at 558-59; *United States v. Hill*, 167 F.3d 1055, 1072 (6th Cir. 1999); *Sarbello*, 985 F.2d at 724; *Busher*, 817 F.2d at 1414. The Supreme Court has held that because RICO permits such wide ranging forfeitures, the district court must take care to fashion a forfeiture order which is not disproportionate to the offense. *Alexander*, 509 U.S. at 559. Courts have concluded that forfeitures are not excessive where they are similar in value to the amount allegedly acquired by fraud or the amount of any fine permitted by the controlling statute. *See Hill*, 167 F.3d at 1072.

In the present case, it is alleged that Mega is the "enterprise" which was operated or conducted in violation of RICO. *See* Third Superseding Indictment, Count 1, p.8. Accordingly, pursuant to § 1963(a)(2), the indictment seeks forfeiture of all of the Defendants "interest in" Mega. *See* Indictment ¶ 164(b). The parties, however, fail to address the applicability of this subsection to the facts of the present case. Based on the representations made thus far, the Court believes that many of the assets at issue will be seizable under this provision, if the Government can establish probable cause to believe that assets constitute an "interest in" Mega (with the notable exception of the payments under the covenant not to compete). To be more precise, the Court notes that the Tenth Circuit opinion in *Jones* provides that the Government bears no burden of proof regarding the underlying offense, and the district court must accept the allegations of the indictment as true. *Jones*, 160 F.3d at 647. The Court must therefore assume that Mega was operated or conducted in violation of RICO. The Government's only obligation here is to demonstrate that there is probable cause to believe that the assets are forfeitable. *Id*. Under 18 U.S.C. § 1963(a)(2), all of the Defendants' interest in the enterprise operated in violation of RICO is forfeitable, not just those assets directly or indirectly traceable to the illegal acts. Thus, the Government need only show probable cause to believe that the assets at issue constitute an "interest in" Mega to warrant the pre-trial restraint of these assets.

Moreover, the Court is reluctant to engage in an excessive fines-constitutionality analysis of the potential seizure at this stage of the case given the very speculative nature of such an inquiry at this point. The Tenth Circuit opinion, which did not address this issue, instructs that the Court is to determine whether there is probable cause to believe that the restrained assets are forfeitable, not to determine whether they should or will ultimately be forfeited. *Id*. Accordingly, the Court will limit

its analysis in the up-coming hearing to whether the assets fall within the sweep of the statute making them subject to forfeiture, not whether the forfeiture as a whole will meet constitutional standards. The Court does note, however, that given an alleged $17,800,000 in health care fraud, the seizure of $3,000,000 in assets does not on its face appear excessive.

### 5. Return of Funds Released to Third Parties

Finally, the parties now agree that, should a jury return a verdict finding some released assets forfeitable, the Government can trace these funds to third parties and seek their return. *See* 18 U.S.C. § 1963(c), (1)(6); 21 U.S.C. § 853(c), (n)(6). Further, the parties agree that the Government may seek substitute assets from Defendants for any funds which have been disbursed. *See* 18 U.S.C. §§ 982(b)(1), 1963 (m); 21 U.S.C. § 853(p). The remaining question is whether the Government can seize substitute assets from third parties if they are no longer in possession of the funds derived from Defendants.

Citing the one case to have addressed this issue, Defendants state "the law is clear that the prosecution could not obtain substitute assets from the law firms." Defendants' Supplemental Memorandum Concerning Procedures on Remand, p. 22. This assertion does not withstand even the most cursory review.

In the case of *In re Moffitt, Zwerling & Kemler, P.C.*, 864 F.Supp. 527, 543 (E.D.Va.1995) (*Moffitt I*), the district court held that the government could trace assets to third parties, including attorneys, and could seize the exact same assets derived from the defendants or any property directly traceable to those assets. However, the court concluded that since the statute provided for the seizure of substitute assets only from the defendant, the government could not seize substitute assets from third parties. *Id*. at 532-40. The government then filed a civil complaint against the law firm, asserting

21

a claim for conversion. *In re Moffitt, Zwerling & Kemler, P.C.* 875 F.Supp. 1152, 1203 (E.D.Va.1995) (*Moffitt II*). The district court dismissed the complaint, concluding that the forfeiture statute preempted the government's conversion claim. *Id*. at 1203-1207.

On appeal, the Fourth Circuit reversed. *United States v. Moffitt, Zwerling & Kemler*, 83 F.3d 660, 667 (4th Cir. 1996), *cert denied* 519 U.S. 1101 (1997) (*Moffit III*). The appellate court agreed that the attorneys did not qualify as bona fide third party purchasers since they, perhaps more than anyone, had reason to know that the assets were subject to forfeiture. *Id*. at 666. The court then held that the forfeiture statute did not preempt a conversion claim and that, on the facts before it, the government successfully stated a cause of action for conversion. *Id*. at 667-70. The appellate court did not address the district court's ruling that the government cannot seize substitute assets from third parties under the forfeiture statutes. *See also United States v. Lester*, 85 F.3d 1409, 1413 (9th Cir. 1996) (favorably citing *Moffitt I*); *United States v. BCCI Holdings*, 961 F.Supp. 287, 304 (D.D.C. 1997) (criticizing *Moffitt I*).

Thus, even if the Court were to apply the holdings of *Moffitt I, II* and *III*, and rule that the Government may not seize substitute assets from the attorneys or other third parties, this Court cannot provide the attorneys or other third parties with assurances that they will not be liable to the Government as a result of a civil action for conversion. Further, even if this Court were to disagree with the Fourth Circuit opinion and conclude that the Government also cannot pursue a conversion claim, the Court cannot assure the parties that this ruling would be upheld on appeal.

Therefore, because the Court's ruling on this issue will not provide the desired certainty and because the issue will only be before the Court if numerous contingencies are met, (i.e., if the Defendants meet their burden of proof in the first stage of the hearing, if the Government fails to

demonstrate probable cause to believe the assets are forfeitable, if the jury returns a verdict of forfeiture of released assets, if the Government is unable to trace the exact funds released to third parties or satisfy the judgment through substitute assets from Defendants, and if the Government moves to seize substitute assets or to pursue a claim for conversion against third parties), the Court concludes that it would be both unhelpful and premature to rule on this issue at this time.

## CONCLUSION

**IT IS THEREFORE ORDERED** that:

1.   The Joneses have standing to contest the restraint of assets owned by them personally and Mega has standing to contest the restraint of assets which belong to the corporation. However, the Court will not release assets belonging to the Mega corporation to be disbursed to the Joneses.

2.   Defendants may call Agent Russin to testify and the Government is ordered to produce any statements by the Agent pursuant to Fed.R.Crim.Proc 26.2(g).

3.   Should Defendants testify at the hearing, the Government may use their testimony for impeachment at trial but not as evidence of guilt and not for investigative purposes.

4.   The Court will apply the but-for or cause in fact standard for determining whether assets are seizable under 18 U.S.C. § 1963(a)(1) and (3). The Court also notes that 18 U.S.C. § 1963(a)(2) provides for the forfeiture of all of Defendants' interest in an enterprise operated or conducted in violation of the RICO statute. The Court will not assess the constitutionality of the potential seizure until the conclusion of the case.

5.   The Government may trace any seizable funds to third parties and seek the return of such funds or property directly traceable to those funds. The Court will not rule at this stage on whether

the Government may seek substitute assets from third parties or otherwise pursue liability against

third parties for forfeitable funds which have been disbursed to others.


_____

MARTHA VÁZQUEZ
U. S. DISTRICT JUDGE


Attorney for Plaintiff:
        Mary Higgins

Attorney for Defendants:
        Nancy Hollander
        John Cline
        Louis Stelzner
        Richard Minzner