IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                    No. CR 98-251 MV

SHIRLEY JONES, STEVEN L. JONES,
MEGA-UNIVERSAL OXYGEN AND
HOME CARE SERVICES, INC.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on several pre-trial motions by Defendants Shirley

and Steven Jones ("Defendants"): Motion to Dismiss for Prosecutorial Misconduct [Doc. No.

212], Motion to Dismiss (Sixth Amendment Right to Counsel of Choice) [Doc. No. 220], Motion

to Dismiss Wire Fraud Counts for Lack of Specificity [Doc. No. 217], Motion for Bill of

Particulars[Doc. No. 214], Motion to Dismiss Forfeiture Counts (No Probable Cause) [Doc. No.

216], Motion to Dismiss for Multiplicity/Duplicity [Doc. No. 215], Motion to Dismiss (Ex Post

Facto) [Doc. No. 213], Motion for Early Production of Jencks Act and Rule 26.2 Statements

[Doc. No. 209], Motion for Notice of Intent to Offer Evidence of Defendants' Prior Acts [Doc.

No. 208], Motion for Preservation and Production of Rough Notes [Doc. No. 211], Motion for

Disclosure of Information Pursuant to Rule 12(d)(2) [Doc. No. 206], and Motion for Discovery

and Inspection of Matters Pursuant to Rule 16 [Doc. No. 207].  The Court has considered the

motions, responses, replies, and relevant law, and issues its rulings below.

## I.      Motion to Dismiss for Prosecutorial Misconduct

Prior to the indictment in this criminal case against Defendants, the United States filed a civil case against Defendants under 18 U.S.C. § 1345 which permits the filing of a civil action to enjoin health care violations.  In that civil action, Civil No. 97-1503, the parties entered into a Modified Consent Preliminary Injunction ("MCPI") which governed property belonging to Defendants.  The MCPI, which followed an earlier Consent Preliminary Injunction, appointed an administrator to manage the affairs of Mega-Universal Oxygen and Home Care Services, Inc. ("Mega"); provided for the sale of Mega, the proceeds of which were to be held in a new Bank of American account; limited the Defendants' ability to dispose of their assets; and allowed Mega to loan the Joneses up to $6,000 per month for living expenses.  The injunction further provided that the administrator did not have the authority to dispose of the Jones' home, two automobiles, clothing and furniture.  *MCPI*, at ¶ 20.

While the MCPI was still in force in the civil case, FBI Special Agent Russin appeared before magistrate judges and obtained a warrant to seize certain property governed by the injunction, including the Bank of America account, company and personal vehicles, and some of the Jones' household items.  In her affidavit in support of the warrant, Agent Russin stated that the CPI was insufficient to secure the funds in the Bank of America and did not preclude criminal seizure of the property listed.  Agent Russin received the warrant and on March 20, 1998, several FBI agents went to the Jones' residence, with their weapons drawn initially, and seized some property.  The agents also seized Mega's Bank of America account.

As part of the civil action, Defendants sought sanctions against the Government and the

return of their property for what they argued was a violation of the MCPI.  The Government argued that its conduct in seizing certain property pursuant to *criminal* forfeiture proceedings did not violate the MCPI in place in the civil action.  The Government asserted that the MCPI only applied to Defendants and did not impose any restrictions on the Government.  Further, the Government relied on its statements in letters to Defendants that neither the civil action nor MCPI precluded the Criminal Division of the United States Attorney's Office from pursuing any available legal actions. One of the letters specifically requests that defense counsel tell the Joneses that the United States Attorney intended to pursue criminal prosecution of them.  *March 6, 1999 letter from U.S. Attorney Mary L. Higgins to Richard C. Minzner and John D. Cline*.   After a hearing on the matter, Judge Black, who presided over the civil case, held that the Government had to make available to the administrator $6,000 per month to loan to the Joneses, but denied the remainder of Defendants' motion seeking sanctions.  Judge Black found that the Government did have the right to act under the forfeiture provision, though it was also bound to abide by the terms of the MCPI.

Defendants now urge this Court to dismiss the indictment against them based on prosecutorial misconduct for Special Agent Russin's conduct in obtaining a seizure warrant and seizing some of Defendants' property.  Defendants assert that Agent Russin's conduct violated the terms of the MCPI:

> [The Defendants], after entering into the several consent preliminary injunctions, were, without any, and indeed false, justification, subject to an abrupt, unannounced seizure of their personal property, held at gunpoint and generally intimidated and left with virtually no personal possessions.  The government even seized Mr. Jones' collection of football ice cream helmets.  The point of this raid, premised on Agent Russin's false affidavit, was to demoralize the Jones, assert to them the government's willingness to go to any means to break down the Jones

and from that perspective was prejudicial to the defense.

*Motion to Dismiss for Prosecutorial Misconduct*, at 3.  While Defendants make these broad assertions in their three-page motion, they fail to offer any support, for example explaining how Agent Russin's affidavit was false.  The Government disputes several of the factual allegations made by Defendants, including that Defendants were held at gunpoint and that "virtually" all of their personal property was seized.

Dismissing an indictment because of prosecutorial misconduct is an extreme sanction which a district court can impose only if the conduct was flagrant and caused substantial prejudice to the defendant.  *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 2373 (1988) (showing of prejudice necessary to dismiss indictment for prosecutorial misconduct); *United States v. Kingston*, 971 F.2d 481, 491 (10th Cir. 1992) (dismissing indictment is extreme sanction); *United States v. Hayward*, 6 F.3d 1241, 1256-57 (7th Cir. 1993) (if no independent constitutional right has been violated, prosecutorial misconduct must be truly outrageous).  In this case Defendants have failed to show that Agent Russin's conduct was either flagrant or that the seizure of Defendants' property by the FBI agents has somehow prejudiced Defendants in this case.  The Court finds that the Government had the authority under 18 U.S.C. § 1357 to seek and execute a seizure warrant to seize Defendants' assets and that its conduct in doing so, arguably in contradiction of the MCPI, does not rise to the level of flagrancy required to justify dismissal of the indictment.

Defendants also argue that the Government's statements that if it lost in the *Monsanto* hearing, it would consider enforcing tax liens against Mega is evidence of prosecutorial misconduct.  The Government counters that it felt obligated to inform the Court and Defendants

4

that federal and state tax authorities were likely to levy the funds at issue.  The Court finds that

the Government's conduct in indicating that it would pursue tax liens against the funds sought to

be forfeited in this case was not improper.  The Government simply pursued a remedy available to

it under the law.  This does not come close to the level of wrongdoing warranting dismissal of the

indictment against Defendants.

**II.      Motion to Dismiss (Sixth Amendment Right to Counsel of Choice)**

Defendants move the Court to dismiss the indictment or to release funds restricted by an

Internal Revenue Service ("IRS") lien against them, arguing that their Sixth Amendment right to

counsel of choice is being violated by the IRS lien.  This Court held *Monsanto* hearings and

concluded that the Government had failed to establish probable cause to conclude that certain

restrained assets – the proceeds from the sale of Mega – were forfeitable.  Accordingly, the Court

dismissed the restraining order restraining those assets.  Immediately after this ruling, pursuant to

a pre-existing tax lien, the IRS levied the funds previously restrained by the Court.  Defendants

now argue that this IRS lien infringes on their ability to hire the lawyer of their choice, thereby

violating their constitutional right to counsel.

The Court did conclude after the *Monsanto* hearings that the Defendants had no other

assets other than the restrained assets to pay legal expenses.  So, while the Court does not dispute

the inability of the Defendants to hire their own attorney, Defendants' motion fails because they

cite no legal support for their suggestion that this Court presiding over this criminal action has the

authority to release funds levied by the IRS.  Though Defendants argue that their Sixth

Amendment right to counsel outweighs any possible governmental interest in the levied funds,

that does not confer upon this Court the ability to direct a matter over which it is not presiding.

As this Court noted after finding that it could not restrain the funds:

> Nor may the Court vindicate the funds from other legal restraints
> not before this Court. The IRS lien is a civil matter which
> Defendants will have to contest through whatever channels are
> available, just as they would if a private individual maintained a
> valid lien on the account. This Court may not simply release the
> funds because Defendants need them. All this Court can and will do
> is dissolve the improper restraining order.

*Memorandum Opinion and Order of August 23, 1999*, at 12.  Defendants having failed to indicate

any authority for this Court to order the release of funds levied by the IRS as requested, the

motion will be denied.

**III.     Motion to Dismiss Wire Fraud Counts for Lack of Specificity and Motion for Bill of
        Particulars**

Count I, charging a violation of RICO, alleges that Defendants engaged in 321 predicate

racketeering acts – wire fraud and money laundering. As to the wire fraud acts in the RICO count

the indictment lists a date for each act and as to the money laundering acts in the RICO count the

indictment includes the date, payee, and amount of funds laundered for each act.  Counts 2

through 203 charge Defendants with wire fraud.  These counts have an introductory paragraph

alleging that Defendants transmitted through wire communications false and fraudulent Medicaid

claims for services allegedly provided to Medicaid patients.  Then, each count consists of a

month, date, and year on which the fraudulent wire transmissions were transacted.  Counts 205

through 229 charge Defendants with money laundering in violation of 18 U.S.C. § 1956 and

1957.  These counts include introductory paragraphs describing how Defendants allegedly

committed the money laundering and each count lists the date, payee and amount of money

transacted.

Defendants attack the sufficiency of these portions of the indictment in two motions. First, Defendants urge the Court to dismiss the wire fraud and money laundering counts. Defendants assert that there is insufficient specificity in the indictment as to the wire fraud counts to put Defendants on notice of the charges against them.  Defendants attack the money laundering counts for commingling "good" and "bad" funds.  Second, pursuant to Federal Rule of Criminal Procedure 7(f), Defendants seek a bill of particulars identifying evidence supporting the alleged racketeering acts and the fraudulent wire transmissions.  Defendants want the Government to disclose its witnesses and evidence in support or these counts as well as additional specificity regarding the wire fraud counts. Defendants assert that though the Government has given them access to the documents upon which the indictment is based and certain summaries, the unorganized state of this information and the fact that it has been rearranged "makes a realistic appraisal of the government's case virtually impossible." *Motion for Bill of Particulars*, at 2.

An indictment is only held to minimal constitutional standards.  *United States v. Edmonson*, 962 F.2d 1535, 1541 (10th Cir. 1992).  "An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997) (citing *United States v. Poole*, 929 F.2d 1476, 1478 (10th Cir. 1991)).  Defendants assert that the indictment is insufficient as to the wire fraud counts because it fails to put them on notice of the charges against them.  The Court finds that the indictment is not constitutionally infirm such that it must be dismissed.  The indictment details that Defendants are alleged to have defrauded the New Mexico Medicaid Program by submitting false Medicaid claims through telephone lines for services not actually provided.  The indictment then

7

provides each date on which Defendants submitted these fraudulent wire submissions. This does put defendants on notice of the elements of the offense. However, the Court finds that a bill of particulars is necessary given the complex nature of this case and the limited specifics provided regarding the wire fraud counts.

A district court has broad discretion in deciding a motion for a bill of particulars. *Edmonson*, 962 F.2d at 1541. "The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the even of a later prosecution for the same offense." *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir. 1988) (quoting *United States v. Cole*, 755 F.2d 748, 760 (11th Cir. 1985)). In this case, Defendants request a bill of particulars with every document the Government will introduce and each witness it intends to call to support each racketeering act underlying the RICO count – Count I – and the wire fraud counts – Counts 2 through 203. The Court will not grant this broad information sought but unsupported by Defendants. Defendants also seek additional specifics regarding the wire fraud counts, and the Court finds that this is warranted. Accordingly, as to each wire fraud count, the Government must provide what Defendants billed for, who the patient was, and what was false or inaccurate about the billing, e.g. whether there was a prescription or not, whether the services were delivered, whether the patient was a false patient, etc.

As to the money laundering counts – 205 through 229, Defendants do not attack the specificity of the indictment in their motion to dismiss the indictment, but rather argue that the indictment does not distinguish between funds legitimately received and disbursed and funds fraudulently obtained. However, Defendants cite no authority indicating that an indictment

8

charging money laundering in violation of 18 U.S.C. §§ 1956 and 1957 must only include funds fraudulently obtained when the transactions include both "good" and "bad" money. Section 1956 (a)(1)(A)(i) makes it illegal to conduct or attempt to conduct a financial transaction which "involves" the proceeds of unlawful activity, thereby contemplating that a transaction charged under the act might involve both illegally and legally obtained funds. Section 1957 covers monetary transactions greater than $10,000 which is derived from illegal activity, but again the statute imposes no requirement that each transaction be comprised only of illicit funds. Accordingly, the Court denies Defendants' motion to dismiss the money laundering counts.

## IV.   Motion to Dismiss Forfeiture Counts (No Probable Cause)

After its *Monsanto* hearings in this case, the Court concluded that the Government had failed to establish probable cause that the restrained assets were forfeitable. The assets at issue were the sales proceeds from the sale of Mega to Premier Medical, Inc./ Ro-Tech, ("Premier"). The major item of worth sold was Mega's patient list and the Court found that the Government had failed to show that the legitimate patients on the list were obtained as a result of illegal activity. Based on the Court's finding that there was no probable cause to restrain the assets prior to trial, Defendants now argue that the Court's ruling finding no probable cause to restrain the funds pre-trial mandates that the Court now dismiss the forfeiture counts for lack of probable cause. This argument relies on a misunderstanding of the scope of the Court's earlier ruling which addressed only the pre-trial restraint of the funds, not the ultimate determination whether the assets are forfeitable. Moreover, as the Government notes, the Defendants cite no authority supporting their apparent contention that the Court's finding of no probable cause should replace the grand jury's finding of probable cause.

The Government also correctly asserts that the Court's finding that certain assets could not be restrained pre-trial was limited to the proceeds derived from the sale of Mega to Premier, and while the indictment does seek forfeiture of those assets, it also seeks forfeiture of additional property about which the Court has made no findings.  Despite the fact that the Court has only addressed the pre-trial restraint of some assets, Defendants seek to dismiss the forfeiture counts as to all of the property listed in the indictment, which includes property other than that which was the subject of the *Monsanto* hearings.  Defendants offer no explanation as to how the Court's previous findings regarding some property affect other property.

For the foregoing reasons, Defendants motion to dismiss the forfeiture counts for lack of probable cause will be denied.

## V.     Motion to Dismiss for Multiplicity/Duplicity

### A.     Multiplicity

An indictment is multiplicitous if it charges more than one count for the same criminal behavior.  *See United States v. Haddock*, 956 F.2d 1534, 1546 (10th Cir. 1992).  The danger of multiplicity is that it may lead to multiple sentences for the same conduct and may confuse the jury by suggesting that the defendant committed multiple crimes.  *Id.*  One of the functions of the Double Jeopardy Clause is to "protect[ ] against multiple  punishments for the same offense. . . . To support a claim for double jeopardy, a defendant must show that the two offenses charged are in law and in fact the same offense."  *United States v. Richardson*, 86 F.3d 1537, 1551-52 (10th Cir. 1996) (internal quotation marks and citations omitted).  "Whether conduct supports two offenses or only one turns on whether each count requires proof of a fact or element not required by the other."  *United States v. Pace*, 981 F.2d 1123, 1134 (10th Cir.1992) (internal quotation

marks and citation omitted).

Defendants argue that charging them for 202 acts of wire fraud and then a count of health care fraud for the same conduct is multiplicitous because it charges them more than once for the same conduct – engaging in a scheme and artifice to defraud by presenting false and fraudulent Medicaid claims.  The Government responds that it is permissible to charge more than one count for the same conduct if the counts require different proof of fact or elements.  Because health care fraud and wire fraud have different elements, the Government argues that charging both is not multiplicitous.

Defendants are correct that some of the underlying facts charged as wire fraud are the same as those alleged to prove health care fraud.   However, the two crimes are distinct and require the Government to prove different elements in order to secure a conviction.  As to the wire fraud, the Government will have to prove that Defendants transmitted false claims "by means of wire, radio, or television communication," 18 U.S.C. § 1343, whereas as to the health care fraud count, the Government will have to establish that the fraud was committed on a health care benefit program.  18 U.S.C. § 1347.  That counts require proof of different elements is sufficient to establish that they are not multiplicitous.  See *Pace*, 981 F.2d 1123, 1134; *see also United States v. Faulhaber*, 929 F.2d 16, 19 (1st Cir. 1991) (holding no multiplicity when indictment charged securities fraud and mail fraud because different proof required for each).  While Defendants point to two cases by the Second Circuit requiring more intensive scrutiny in assessing whether counts are multiplicitous, this Court is bound to follow the Tenth Circuit rule in *Pace*. Under this standard, the indictment is not multiplicitous, so the Defendants' motion to dismiss counts for multiplicity will be denied.

11

**B.    Duplicity**

Duplicity is the joining of two or more offenses in one count.  *United States v. McKneel*y, 69 F.3d 1067, 1972 (10th Cir. 1995).  This is impermissible because it "creates the possibility that the jury may convict the defendant without unanimously agreeing on guilt for the same offense, and also raises double jeopardy concerns."  *Id.* (citation omitted).  Alleging several alternative means of committing a single offense in one count is not duplicitous.  *Id.*; *United States v. Wiles*, 102 F.3d 1043, 1061 (10th Cir. 1996).  Defendants contend that Count I alleging RICO violations is impermissibly duplicitous because underlying the count are 202 acts of wire fraud and 118 acts of money laundering which are too attenuated to justify being charged together in a single RICO count.

The Third Superseding Indictment charges that Defendants were employees of Mega which was an enterprise through which Defendants knowingly conducted and participated in a pattern of racketeering activity in violation of 18 U.S.C. § 1961(1) and (5).  To constitute a "pattern of racketeering activity," there must be at least two acts of racketeering activity.  18 U.S.C. § 1961 (5).  In this case, the indictment alleges that the pattern of racketeering activity included 202 acts of wire fraud and 118 acts of money laundering.  Courts have specifically held that charging in a single count multiple acts which comprise an ongoing scheme to defraud or an ongoing racketeering scheme is not duplicitous.  *See Wiles*, 102 F.3d at 1061-62 (count charging securities fraud by engaging in multiple fraudulent sales of stock and charging one defendant with issuing several false mailings and press releases was not duplicitous where a complex fraudulent scheme was alleged and district court gave unanimity instruction); *United States v. Yarbrough*, 852 F.2d 1522, 1530-31 (9th Cir. 1988) (single RICO count alleging violation of federal

racketeering laws through predicate acts of disposing of money from robbery proceeds and

receiving a portion of the money was not duplicitous).  As in *Yarbrough*, in this case Defendants

are charged with one crime in Count I – violating federal racketeering laws by committing

multiple predicate acts.  Those alleged acts make up a complex scheme of racketeering which are

properly charged under one count.  However, to avoid possible jury confusion, the Court will give

a unanimity instruction.  *See United States v. Trammel*, 133 F.3d 1343, 1354-55 (10th Cir. 1998).

The parties are encouraged to submit a proposed unanimity instruction.

**VI.**  **Motion to Dismiss (Ex Post Facto)**

Count 204 of the Third Superseding Indictment charges Defendants *inter alia* with

committing health care fraud in violation of 18 U.S.C. § 1347 and seeks to forfeit certain property

under the health care fraud forfeiture provision – 18 U.S.C. § 982(a)(6).  These provisions were

enacted on August 21, 1996.  The health care fraud count alleges acts from January 1, 1994 to

December 31, 1997 and the health care fraud forfeiture allegation is based on the conduct in this

count.  Defendants assert that Count 204 violates the constitutional prohibition against ex post

facto laws because they are charged with some acts which occurred before the enactment of the

applicable statute.  Defendants note that courts have interpreted the Ex Post Facto Clause as

allowing indictments with conspiracy charges which began prior to but continued after enactment

of the specific statute, but assert that this principle does not apply in this case because the acts

charged are continuing acts, rather than a continuing conspiracy.  The Government responds that

because Count 204 charges the Defendants with an ongoing enterprise that began before and

continued after the effective date of the statute, there is no Ex Post Facto Clause violation.

The Ex Post Facto Clause provides that "[n]o . . . ex post facto Law shall be passed."

13

U.S. Const. art. I, § 9, cl. 3.  The Supreme Court has interpreted the clause to prohibit Congress

from enacting a law that: (1) makes an act a crime that was legal when committed; (2) makes a

crime greater than it was when it was committed; (3) increases the punishment for a crime after it

has been committed; or (4) deprives the accused of a defense that was available when the crime

was committed.  *See Collins v. Youngblood*, 497 U.S. 37, 41-42 (1990).  Numerous courts have

held that if a conspiracy or continuing scheme is alleged there is no ex post facto violation if a

portion of the scheme occurred after the applicable statute was enacted.  *See United States v.*

*Kubrick,* 205 F.3d 1117, 1128 (9th Cir. 1999) (no ex post facto violation in applying Mandatory

Victim Restitution Act in sentencing defendants for conspiracy to commit bankruptcy fraud when

the defendants admitted the conspiracy continued beyond the Act's effective date); *United States*

*v. Harris*, 79 F.3d 223 (2nd Cir. 1986) (no Ex Post Facto Clause violation where the Defendant

was convicted of conducting a continuing financial crimes enterprise where one of the counts

involved conduct occurring before the enactment of the statute and the remaining counts alleged

conduct after the statute's effective date); *United States v. Garfinkel*, 29 F.3d 1253, 1259 (8th

Cir.1994) (because conducting a scheme to defraud was a continuing offense, applying the mail

fraud statute to the scheme that spanned the date of enactment of that statute did not violate the

Ex Post Facto Clause).

Defendants rely on *United States v. Mussari*, 152 F.3d 1156 (9th Cir. 1998) in which the

Ninth Circuit held that the Ex Post Facto Clause was violated when the defendant was convicted

of several acts of failure to pay child support including some acts before the effective date of the

statute.  In particular, Defendants point to language in a subsequent Ninth Circuit case, *Kubick*, in

which the court distinguished *Mussari* on the basis that the defendant in *Kubick* had been

convicted of a conspiracy whereas the defendant in *Mussari* engaged in ongoing conduct which was not a conspiracy. *Kubick*, 205 F.3d at 1129. However, other cases such as *Harris*, 79 F.3d 223, and *Garfinkel*, 29 F.3d 1253, have held that there is no ex post facto violation when the act charged is an ongoing scheme which occurred in part after the relevant statute became effective. In this case the challenged Count charges health care fraud in violation of 18 U.S.C. § 1347. The statute prohibits schemes or artifices to defraud a health care benefit program and Defendants have been charged with an ongoing scheme to commit such fraud. Therefore, because the scheme charged alleges conduct after the statute's effective date as well as conduct before the date, there is no violation of the Ex Post Facto Clause.

Next, Defendants argue that Counts 236 and 237 charging Defendant Shirley Jones with obstruction of an investigation of health care fraud offense, in violation of 18 U.S.C. § 1518, violates the Ex Post Facto Clause though those counts allege conduct which occurred after the statute was enacted. Defendants state "[a]lthough the alleged acts of obstruction occurred after the enactment of the applicable statute, . . . the context of section 1518 refers to section 1347 which was enacted after the inception of the continuing activity, making section 1518 likewise violative of the ex post facto clause." *Motion to Dismiss (Ex Post Facto)*, at 4. Defendants cite no authority for this assertion nor is the Court aware of case law holding that if one count violates the Ex Post Facto Clause, a related count charging conduct after the enactment of the statute, that latter count also constitutes an ex post facto violation. Defendants' argument also fails because the Court has held that Count 204 does not violate the Ex Post Facto Clause.

**VII.    Motion for the Submission of a Jury Questionnaire**

Defendants, without consulting with Plaintiff, filed this motion asking that potential jurors

in this case fill out a questionnaire to assist counsel in conducting voir dire.  The Court has

previously ruled on the substance of Defendants' motion, but the Court wishes to address an issue

of great concern – that defense counsel submitted several motions which would not obviously be

opposed by the Government, without first checking with the Government.  Such conduct wastes

counsel's time and CJA funds as well as judicial resources – rendering unnecessarily laborious

issues which could be easily resolved if counsel would communicate with one another.  The Court

admonishes counsel to try to resolve issues before needlessly involving the Court.  As to the jury

questionnaire, for example, defense counsel should have called the Government to discuss the

issue.  Once an agreement was reached, the parties should have submitted a joint motion and

stipulated order with the terms of the agreement.

**VIII.   Motion for Early Production of Jencks Act and Rule 26.2 Statements**

Given that the Government does not oppose Defendants' motion seeking production of all

Jencks Act and Rule 26.2 statements within 30 days of this order, the Court grants the motion.

Again, counsel was remiss in failing to discuss the matter with opposing counsel.

**IX.      Motion for Notice of Intent to Offer Evidence of Defendants' Prior Acts**

Defendants move the Court for an order requiring the Government to disclose any

evidence which it intends to offer against Defendants pursuant to FED. R. EVID. 404(b) no later

than 60 days prior to the trial.  The Government does not oppose providing this information, but

requests that the deadline for production of the 404(b) evidence be 30 days prior to trial.  The

Court finds that 30 days prior to trial is sufficient and grants Defendants' motion with this

deadline.

16

## X.      Motion for Preservation and Production of Rough Notes

Defendants seek to require the Government to preserve and produce what they refer to as "rough notes" from interviews conducted by government agents investigating this case.  The Government does not oppose the motion to the extent it requires preservation of notes, but it does oppose the requested production.  Defendants seem to argue that because the Government is required to disclose any information which may be exculpatory or otherwise favorable to Defendants, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and Jencks Act material, the Government must produce all rough notes.  While the Court obviously does not disagree that the Government must produce *Brady* and Jencks Act material, this is not a basis for requiring the production of *all* rough notes of all government agents who have been involved in this case and Defendants cite no authority or particular circumstances in this case supporting this broad production.  The Court is requiring the Government to produce Jencks Act materials, but cannot grant the Defendants' request for the production of all rough notes.  Accordingly, the Court grants the Defendants motion requiring that rough notes be preserved but denies the wholesale production sought.

## XI.     Motion for Disclosure of Information Pursuant to Rule 12(d)(2)

Federal Rule of Criminal Procedure 12(d)(2) provides in relevant part:

> [T]he defendant may, in order to afford an opportunity to move to suppress evidence under subdivision (b)(3) of this rule, request notice of the government's intention to use (in its evidence in chief at trial) any evidence which the defendant may be entitled to discover under Rule 16.

The Advisory Committee's notes to the 1974 Amendments further explicate the purpose of this rule:

> Although the defendant is already entitled to discovery of such evidence prior to trial under rule 16, rule 12 makes it possible for him to avoid the necessity of moving to suppress evidence which the government does not intend to use.

A government open-file policy does not satisfy Rule 12(d)(2) because the defendant is still left in the dark about what evidence, discoverable under Rule 16, the government intends to rely upon in its case in chief at trial. *U.S. v. de la Cruz-Paulino*, 61 F.3d 986, 993 (1st Cir. 1995).

Defendants move under Rule 12(d)(2) for the Government to disclose any information it intends to use at trial, including at rebuttal, to give Defendants a change to move for suppression. The Government opposes the broad scope of Defendants' motion, arguing that the rule does not contemplate requiring the Government to disclose all of the evidence they intend to use at trial, but only notice of its intention to use "specified" evidence. The Government states "[s]ince the United States does not have a generalized obligation to provide the Rule 12(d)(2) notice, the defendants must provide some indication from all the discovery that they have received, what specific evidence they are concerned about." *United States Response to Defendants' Motion for Disclosure of Information Pursuant to Rule 12(d)(2)*, at 3. However, the Government provides no authority in support of this assertion. According to the clear language of the rule, Defendants are entitled to notice of the evidence which the Government intends to use in its case in chief which is discoverable pursuant to Rule 16. Though the Government cites to case law which states that Rule 12(d) was not intended to aid the defendant in ascertaining the government's trial strategy, *see, e.g., Cruz-Paulino*, 61 F.3d at 994, this authority does not hold that therefore a defendant is not entitled to notice of evidence. Therefore, the Court will grant Defendants' motion and orders the Government to give notice of that evidence it intends to use in its case in chief which is properly discoverable under Rule 16. However, the Court will not grant

Defendants' request that this be extended to rebuttal evidence.  The Government is not obligated to give notice of evidence it intends to use during cross-examination of a defendant or as part of its rebuttal case.  *See United States v. Lanier*, 578 F.2d 1246, 1254; *United States v. Climatemp, Inc.*, 482 F.Supp. 376, 391 (D.C.Ill. 1976).

## XII.    Motion for Discovery and Inspection of Matters Pursuant to Rule 16

Defendants assert in this motion that they are entitled to certain information pursuant to Criminal Rule of Civil Procedure 16 – essentially information regarding how the Government compiled various summaries of information and databases in this case.  Defendants state that they are unsure whether the Government has provided Defendants with the "mythical 'fraud database.'"  Further, according to Defendants, because the information which the Government has assembled is so disorganized, this makes it "virtually impossible for counsel to prepare for trial and to provide effective assistance of counsel to Defendants."   Specifically Defendants ask the Court to order the Government to disclose:

9.1     [I]dentities of all of the people, along with their agencies and job titles and descriptions, who worked on the accounting and accumulation of the information in building the Government's case against the Defendants.

9.2     A complete written explanation of the methods used by the Government to assemble its allegations of fraud against the Defendants, including an identification of the computer programming which was used or done in the construction of the case and the processing of the raw data used in reaching those allegations.

9.3     Disclosure of the identities of the persons who determined the manner in which the Government would proceed in processing the raw data.

9.4     Contact information on Kenneth Haines. . . .

9.5     All work papers and intermediate documents used by the Government . . . in constructing the database or databases (including the "fraud database")

from the source documents.  These documents should be in their originial form and context.  For example, if the Government created Microsoft Excel files in this process, the electronic files, rather than simply the paper printout, should be disclosed to the Defendants.

9.6     Specific disclosure of any information the Government believes establishes intent to defraud by the Defendants.

*Defendants' Motion for Discovery and Inspection of Matters Pursuant to Rule 16*, at 4-5.

The Government asserts that it has provided Defendants with the "fraud database" and several other summaries of information and that most of the information it has compiled and has allowed Defendants to review is in fact well organized.  According to the Government, only the information obtained directly from Defendants is disorganized.  The Government also points out that defense counsel who filed this Rule 16 motion, Mr. Robert, has never once discussed with the Government the problems he is apparently facing in reviewing the Government's documents.  The Government has been in contact with Mr. Lopez, Ms. Jones' other counsel, who the Government asserts has never indicated that discovery problems are preventing him from effectively defending the case.  Once again, the Court reminds all parties of the importance of discussing and trying to resolve problems with opposing counsel before bringing issues to the Court's attention.

The Government asserts in response to Defendants' claim that the Government has refused to provide the methodology underlying certain summaries, that it is unaware which summaries Defendants mean and that it has met several times with defense counsel and their accountants to discuss the case and to explain how they compiled the fraud database.  The Government also asserts that it has provided Defendants with the Consultec download containing the original claims information and a disk with the underlying raw data as well as other summaries, raw data, and methodologies.

20

The Government objects to the disclosure of items 9.1, 9.3, 9.5 and 9.6, asserts that it has disclosed the information in 9.2, and states that it will disclose the contact information sought in 9.4.  The Court denies Defendants' request for items 9.1, 9.3, 9.5 and 9.6.  Much of this information is arguably work product and Defendants have failed to make a specific showing justifying the disclosures sought.  Given that the Government does not object to items 9.2 and 9.4, the Court orders its production to the extent it has not yet been provided.

Defendants' motion also seeks leave from the Court to file additional discovery requests given that they have not yet reviewed all of the discovery in this case.  The Court denies this request.  The Court has been clear with Defendants since their current counsel was retained that this case would be going to trial October 2000 and that Defendants needed to complete discovery in time to accommodate this trial date.  Moreover, the Court already gave Defendants an extension of additional time within which to file pretrial motions.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Motion to Dismiss for Prosecutorial Misconduct **[Doc. No. 212]** is hereby **denied**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss (Sixth Amendment Right to Counsel of Choice) **[Doc. No. 220]** is hereby **denied**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Wire Fraud Counts for Lack of Specificity **[Doc. No. 217]** is hereby **denied**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Bill of Particulars **[Doc. No. 214]** is hereby **granted in part and denied in part**.  As to each wire fraud count, the Government must provide what Defendants billed for, who the patient was, and what was false or

21

inaccurate about the billing

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Forfeiture Counts (No Probable Cause) **[Doc. No. 216]** is hereby **denied**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss for Multiplicity/Duplicity **[Doc. No. 215]** is hereby **denied**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss (Ex Post Facto) **[Doc. No. 213]** is hereby **denied**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Early Production of Jencks Act and Rule 26.2 Statements **[Doc. No. 209]** is hereby **granted**.  The Government is hereby ordered to produce Jencks Act and Rule 26.2 statements to Defendants within 30 days of this order.

**IT IS FURTHER ORDERED** that Defendants' Motion for Notice of Intent to Offer Evidence of Defendants' Prior Acts **[Doc. No. 208]** is hereby **granted in part**.  The Government is hereby ordered to disclose any evidence which it intends to offer against Defendants pursuant to FED. R. EVID. 404(b) no later than 30 days prior to trial.

**IT IS FURTHER ORDERED** that Defendants' Motion for Preservation and Production of Rough Notes **[Doc. No. 211]** is hereby **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Disclosure of Information Pursuant to Rule 12(d)(2) **[Doc. No. 206]** is hereby **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Discovery and Inspection of Matters Pursuant to Rule 16 **[Doc. No. 207]** is hereby **denied** as to items 9.1, 9.3, 9.5 and 9.6, **granted** as to items 9.2 and 9.4, and **denied** as to Defendants' request for additional time to file

discovery motions.

DATED this 9th day of August, 2000.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT JUDGE


Attorney for Defendant Steven Jones
David Plotsky

Attorneys for Defendant Shirley Jones
Floyd Lopez
Marc Robert

Attorney for Defendant Mega
Richard Minzner

Attorneys for Plaintiff
Mary Higgins
Edwin Winstead
Robert Baca

23